**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

v.                              CRIMINAL ACTION NO. 2:10-cr-00057-1

LAMONT D. HONEYCUTT,

        Defendant.

**MEMORANDUM OPINION**

Pending before the Court is Defendant Lamont D. Honeycutt's ("Defendant" or "Mr. Honeycutt") objection to the probation officer's recommendation that his sentence be subject to the career offender enhancement, U.S.S.G. §4B1.1. The parties have thoroughly briefed the issue and the Court heard argument on June 7, 2011. Having considered the aforementioned arguments and binding precedent on the issue before the Court, the objection is hereby **OVERRULED**. Defendant is a career offender based on two prior felony convictions for wanton endangerment with a firearm, which are "crimes of violence" falling within the residual clause of the career offender enhancement.

*I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

On March 16, 2010, the Grand Jury returned a four-count indictment charging Defendant with several violations of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, and being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(1). On March 2, 2011, Defendant pled guilty to Count Two of the indictment, which charged him with aiding and abetting the possession with intent to distribute for remuneration a quantity of marijuana in violation of 21

U.S.C. § 841(a)(1) and 18 U.S.C. § 2. In anticipation of sentencing, the probation officer prepared a presentence investigation report ("PSR") for the Court's review. The PSR reveals (and Defendant does not contend otherwise) that Mr. Honeycutt has two prior convictions in Kanawha County Circuit Court for wanton endangerment involving a firearm in violation of W. Va. Code § 61-7-12, and one prior conviction in Kanawha County Circuit Court for delivery of cocaine. The probation officer recommends that the Court enhance Mr. Honeycutt's sentence based on U.S.S.G. §4B1.1, based on a finding that his prior convictions for wanton endangerment with a firearm qualify as predicate crimes of violence under Sentencing Guidelines. Defendant vigorously objects to the probation officer's recommendation, arguing that wanton endangerment with a firearm is not a crime of violence under the Supreme Court's decision in *Begay v. United States*, 553 U.S. 137 (2008), and persuasive precedent from the Second, Sixth, Seventh, and Ninth Circuit Courts of Appeals. Specifically, Mr. Honeycutt argues that "wanton" does not amount to "purposeful" conduct, as required by *Begay*. The United States urges the Court to accept the probation officer's recommendation. If the career offender enhancement applies, Mr. Honeycutt's imprisonment range under the Sentencing Guidelines will be 37 to 46 months (assuming the United States recommends a third point for acceptance of responsibility under U.S.S.G. §3E1.1(b)).[1] If the enhancement does not apply, Mr. Honeycutt's imprisonment range under the Sentencing Guidelines will be 12 to 18 months.[2]

---

[1] Based on a criminal history category of VI and a base offense level of 17, as required by U.S.S.G. § 4B1.1. With a three-point reduction for acceptance of responsibility, Defendant's adjusted offense level would be 14.

[2] Based on a criminal history category of II and a base offense level of 14, pursuant to U.S.S.G. §§ 4A1.1 and 2D1.1, respectively. With a two-point reduction for acceptance of responsibility,
(continued...)

On June 7, 2011, the Court held a hearing to resolve this objection to the PSR, but ultimately took the issue under advisement and continued the sentencing. On June 9, 2011, the Supreme Court of the United States issued its opinion in *Sykes v. United States*, No. 09-11311, slip op. (June 9, 2011), which deals with issues relevant to the career offender enhancement in this case. Both parties had adequate opportunity to brief the impact of the *Sykes* case, and the Court is now prepared to rule on this objection.

## II. APPLICABLE LAW

### A. Career Offender Guideline

U.S.S.G. §4B1.1(a) provides for a sentencing enhancement if the district court finds the defendant to be a "career offender." A career offender is defined as a defendant (1) who is at least eighteen years old at the time he committed the instant offense of conviction; (2) whose instant offense of conviction is "a felony that is either a crime of violence or a controlled substances offense"; and (3) who "has at least two prior felony convictions of either a crime of violence or a controlled substances offense." U.S.S.G. §4B1.1(a). The determination of whether prior felony convictions are counted under §4B1.1 is governed by the provisions of § 4A1.2, which pertains to computing criminal history points. *See* U.S.S.G. §4B1.2, comment. (n.3); *see also United States v. Romary*, 246 F.3d 339, 342 & n.2 (4th Cir. 2001). Section 4A1.2(e) outlines the applicable time period to be used for determining whether to count prior felony convictions under the career offender provision. To be counted as a predicate felony conviction for the career offender enhancement, the defendant must have received either (1) a sentence of imprisonment exceeding one

---

[2](...continued)
Defendant's adjusted offense level would be 12.

year and one month imposed within fifteen years of the commencement of the instant offense or (2) any other sentence imposed within ten years of the commencement of the instant offense. U.S.S.G. §4A1.2(e)(1) & (2). Mr. Honeycutt's prior conviction of delivery of cocaine occurred in 1997, more than ten years prior to the commencement of the offense of conviction, and he received no sentence of imprisonment. Accordingly, the delivery of cocaine conviction cannot serve as a career offender predicate felony. *See* U.S.S.G. §4A1.2(e)(3) ("Any prior sentence not within the time periods specified above is not counted.").

The remaining two possible predicate felonies are both for wanton endangerment with a firearm in violation of W. Va. Code § 61-7-12. On August 17, 2001, Mr. Honeycutt was sentenced in Kanawha County Circuit Court to a five-year term of probation for both violations of the wanton endangerment statute. The Court notes that although Mr. Honeycutt was sentenced concurrently for both convictions of wanton endangerment with a firearm, there was an intervening arrest between the offenses, and they can therefore serve as separate predicate felony offenses for purposes of the career offender enhancement. *See* U.S.S.G. §4A1.2(a)(2). Additionally, Mr. Honeycutt's sentence for both convictions was imposed within ten years of the commencement of the instant offense.

To qualify as a predicate felony under the career offender enhancement, a previous conviction must be either a controlled substance offense or a crime of violence, as those terms are defined in the Sentencing Guidelines. The term "crime of violence" is defined as:

> [A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> > (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.

U.S.S.G. §4B1.2(a) (emphasis added). Although the United States argues that Defendant's prior felonies may satisfy the first clause of this definition (the "element test") as well as the third clause, this memorandum opinion addresses only the third clause (the "residual clause").

The residual clause of the career offender enhancement is identical to a clause in the Armed Career Criminal Act ("ACCA"), which the Supreme Court has had multiple occasions to interpret. Like every other circuit to consider the issue, the Fourth Circuit has concluded that the Supreme Court's holdings on the residual clause in the ACCA are equally applicable to the residual clause in the career offender enhancement. *See United States v. Seay*, 553 F.3d 732, 739 (4th Cir. 2009) ("[W]e conclude that *Begay*'s analysis is applicable to U.S.S.G. §4B1.2(a)(2)."). It is therefore necessary to consider the Supreme Court's rulings in *Begay* and more recently *Sykes* in assessing the scope and application of the residual clause in the career offender guideline.

    *B.* Begay v. United States *and* Sykes v. United States

In *Begay*, the Supreme Court stated that not "every crime that presents a serious potential risk of physical injury to another" constitutes a predicate offense under the residual clause of the ACCA. 553 U.S. at 142. The Court reasoned that Congress listed the offenses of "burglary of a dwelling, arson, or extortion" and crimes involving explosives in order to limit the residual clause to only those offenses "that are roughly similar, in kind as well as in degree of risk posed, to the examples." *Id.* at 142-43. Concluding that the listed crimes "typically involve purposeful, violent, and aggressive conduct," *id.* at 144, the *Begay* Court stated that other crimes must also have those attributes to qualify as crimes of violence. Applying that rule to the facts before it, the Supreme

Court in *Begay* held that a DUI conviction is not "purposeful" but rather "strict liability, criminalizing conduct in respect to which the offender need not have had any criminal intent at all." *Id.* at 145.

On June 9, 2011, the Supreme Court ruled on the ACCA's residual clause again. The defendant in *Sykes* challenged the Seventh Circuit's ruling that his "knowing[ ] and intentional[ ]" flight from police officers was a crime of violence. He relied heavily on *Begay* and argued that his conduct was not "purposeful," therefore falling outside the ACCA's residual clause. In rejecting the defendant's arguments, the *Sykes* majority stated the following:

> Sykes argues that, regardless of risk level, typical vehicle flights do not involve the kind of dangers that the [ACCA]'s residual clause demands. In his view this Court's decisions in *Begay* and *Chambers* require ACCA predicates to be purposeful, violent, and aggressive in ways that vehicle flight is not. Sykes, in taking this position, overreads the opinions of this Court.

*Sykes*, slip op. at 10. The *Sykes* Court went on to say:

> The sole decision of this Court concerning the reach of the ACCA's residual clause in which risk was not the dispositive factor is *Begay*, which held that [DUI] is not an ACCA predicate. There, the Court stated that DUI is not purposeful, violent, and aggressive. But the Court also gave a more specific reason for its holding. "[T]he conduct for which the drunk driver is convicted (driving under the influence) need not be purposeful or deliberate," *Begay*, 553 U.S. at 145 (analogizing DUI to strict-liability, negligence, and recklessness crimes). By contrast, the Indiana statute at issue here has a stringent *mens rea* requirement. Violators must act "knowingly or intentionally."

*Id.* The Court continued to question the "purposeful, violent, and aggressive" requirement from *Begay*:

> The phrase "purposeful, violent, and aggressive" has no precise textual link to the residual clause, which requires that an ACCA predicate "otherwise involv[e] conduct that presents a serious potential risk of physical injury to another." The *Begay* phrase is an addition to the statutory text. In many cases the purposeful, violent, and aggressive inquiry will be redundant with the inquiry into risk, for crimes that fall within the former formulation and those that present serious potential risks of

> physical injury to others tend to be one and the same. As between the two inquiries, risk levels provide a categorical and manageable standard that suffices to resolve the case before us.

*Id.* at 11. Although the Supreme Court's holding in *Sykes* is not a model of clarity, *see Sykes*, slip. op. at 1-3 (Scalia, J., dissenting), a few points may be gleaned from the above-cited passages. After *Sykes*, resort to *Begay*'s "purposeful, violent, and aggressive" test is not required in every case. This conclusion flows from the Court's plain statement that "[i]n general, levels of risk divide crimes that qualify [as predicates] from those that do not," and its ultimate holding that "risk levels provide a categorical and manageable standard that suffices to resolve the case before us." *Id.*, slip op. at 10. The Court reiterated that although "the purposeful, violent and aggressive formulation was used in [*Begay*] to explain the result," resort to that analysis was unnecessary in *Sykes*. *Id.* at 11. Thus, objective risk or dangerousness appears to be the general measure of whether an offense is a crime of violence, and other considerations, such as the "purposeful, violent, and aggressive" formulation from *Begay*, are apparently reserved for unusual circumstances. Such unusual circumstances may exist when predicate convictions are "akin to strict liability, negligence, and recklessness crimes," as was the case in *Begay*. *Id.* This reconciliation of *Begay* and *Sykes* was posited by the concurrence and both dissents, and expressly rejected by Justice Kagan's dissent. *See Sykes*, slip op. at 1 (Thomas, J., concurring) ("[T]he majority errs by implying that the 'purposeful, violent, and aggressive' test may still apply to offenses 'akin to strict liability, negligence, and recklessness crimes.'"); *id.* at 3 (Scalia, J., dissenting) ("[T]he Court now suggests [the *Begay* test] applies only 'to strict liability, negligence, and recklessness crimes.'"); *id.* at 2 n.1 (Kagan, J., dissenting) ("I understand the majority to retain the 'purposeful, violent, and aggressive' test, but to conclude that

7

it is 'redundant' in this case.").[3] Even as to such "strict liability, negligence, and recklessness crimes," however, it is far from clear that the Supreme Court is still committed to the *Begay* test. The majority was deliberate in its criticism of the *Begay* test, particularly highlighting the test's lack of a "textual link" and observing that *Begay* was the Court's "sole decision" to rely on the test rather than a more general assessment of risk. In short, it is unclear whether the *Begay* test survived *Sykes*, and if so, under what circumstances *Begay* continues to apply. For purposes of this memorandum opinion, the Court assumes without deciding that the *Begay* formulation continues to apply in the unusual case of predicate convictions "akin to strict liability, negligence, and recklessness crimes."

## III. DISCUSSION

The thrust of Defendant's argument is that wanton endangerment with a firearm requires only recklessness, and several courts of appeals have held recklessness insufficient to pass the *Begay* test, which requires "purposeful" conduct.[4]

### A. Wanton Is More Than Reckless

W. Va. Code § 61-7-12 provides, in pertinent part, that "[a]ny person who wantonly performs any act with a firearm which creates a substantial risk of death or serious bodily injury to another shall be guilty of a felony." Defendant argues that the definition of "wanton," as used in the wanton endangerment with a firearm statute, is reckless and nothing more. In support of that assertion,

---

[3] The dissent penned by Justice Kagan states: "I do not think the majority could mean to limit the [*Begay*] test to 'strict liability, negligence, and recklessness crimes.'" *Sykes*, slip op. at 2 n.1 (Kagan, J., dissenting). Justice Kagan notes that such an interpretation would "collide with *Chambers v. United States*, 555 U.S. 122 (2009)—a decision the majority cites approvingly . . . which applied the test to an intentional crime." *Id.*

[4] *See, e.g.*, *United States v. Coronado*, 603 F.3d 706 (9th Cir. 2010); *United States v. Gear*, 577 F.3d 810 (7th Cir. 2009); *United States v. Baker*, 559 F.3d 443 (6th Cir. 2009); *United States v. Gray*, 535 F.3d 128 (2d Cir. 2008).

Defendant cites to *State v. Bell*, 565 S.E.2d 430 (W. Va. 2002), and *United States v. Helms*, 78 F.3d 580 (4th Cir. 1996) (unpublished per curiam decision). However, the relevant excerpt in *Bell* is a short discussion of a Kentucky decision amidst the West Virginia court's discussion of whether brandishing a firearm is a lesser included offense of wanton endangerment with a firearm. *See* 565 S.E.2d at 434 ("The specific issue of whether wanton endangerment could include brandishing was addressed in *Hancock v. Commonwealth*, 998 S.W.2d 496 (Ky. App. 1998) . . . [where] the court explained that 'examples of conduct which constitute wanton endangerment include . . . using firearms or explosives in a grossly careless manner . . . ."). From that dictum in *State v. Bell*, Defendant purports to distill the proposition that West Virginia equates wanton with reckless. Similarly, Defendant asserts that in *United States v. Helms*, the Fourth Circuit held that West Virginia's wanton endangerment with a firearm statute means "reckless." (Docket 61 at 3.) This claim is based on a single sentence in the *Helms* decision, where the Fourth Circuit noted that "[t]he district court found that [defendant]'s conduct was wanton because he had acted with reckless disregard for the safety of . . . others." 78 F.3d at 580. At no point in this unpublished decision did the Fourth Circuit itself use the term "reckless," instead using the term only to describe the basis of the district court's ruling. In truth, neither *State v. Bell* nor *United States v. Helms* establishes that wanton and reckless are interchangeable in West Virginia, as Defendant suggests.

Instead, heeding the instruction of the West Virginia Supreme Court of Appeals, the Court will give the term "wanton" its common, ordinary and accepted meaning. *See Subcarrier Commc'ns, Inc. v. Nield*, 624 S.E.2d 729, 737 (W. Va. 2005) (quoting Syl. pt. 1, *Miners in Gen. Grp. v. Hix*, 17 S.E.2d 810 (W. Va. 1941), *overruled on other grounds by Lee-Norse Co. v. Rutledge*, 291 S.E.2d 477 (W. Va. 1982)). The Court must additionally presume that the Legislature said in the

9

wanton endangerment with a firearm statute what it meant to say and that the statute means what it says. *Id.* at 736 (quoting *Martin v. Randolph County Bd. of Educ.*, 465 S.E.2d 399, 414 (W. Va. 1995) (citation omitted)). In that vein, the Court turns to legal dictionary definitions, other jurisdictions' criminal jury instructions on the definition of "wanton," and case law interpreting "wanton" in sister jurisdictions.

> "Wanton" is generally defined as:
>
> Unreasonably or maliciously risking harm while being utterly indifferent to the consequences. In criminal law, wanton usually connotes malice (in the criminal-law sense), while reckless does not. "Wanton differs from reckless both as to the actual state of mind and as to the degree of culpability. One who is acting recklessly is fully aware of the unreasonable risk he is creating, but may be trying and hoping to avoid any harm. One acting wantonly may be creating no greater risk of harm, but he is not trying to avoid it and is indifferent to whether harm results or not. Wanton conduct has properly been characterized as 'vicious' and rates extreme in the degree of culpability. Wanton conduct is reckless plus, so to speak." Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 879-80 (3d ed. 1982).

Black's Law Dictionary (9th ed. 2009) (cross-references and citations omitted). Various criminal jury instructions define "wanton" as "acting intentionally in heedless disregard of the consequences and under such surrounding circumstances and conditions that a reasonable person would know or have reason to know that such conduct would, in a high degree of probability, harm a person or property." 11A Wash. Prac. Pattern Jury Instr. Crim. § 95.10 (3d ed. 2008); "acts intentionally performed with a conscious disregard for the safety of persons or property," Cal. Jury Instr.—Crim. § 12.85 (2011 ed.) (defining "willful or wanton); "consciously disregard[ing], or . . . [being] indifferent to, an immediate danger of substantial harm to other people or their property," II Mass. Crim. Model Jury Instrs. § 8.260 (2009). Several states in nearby jurisdictions also define "wanton" to mean "conscious or intentional disregard" of dangerous consequences, a definition that surely amounts to more than mere recklessness. *See Bauberger v. Haynes*, 632 F.3d 100, 107 (4th Cir.

2011) ("Under North Carolina law, 'wantonness' describes 'intentional wrongdoing,' conduct undertaken in 'conscious and intentional disregard of and indifference to the rights and safety of others.'" (quoting *State v. Williams*, 199 S.E.2d 409, 412 (N.C. 1973))); *Ramsey v. Commonwealth*, 157 S.W.3d 194, 196 (Ky. 2005) ("A person acts wantonly 'when he is aware of and *consciously disregards* a substantial and unjustifiable risk that the result will occur or that the circumstance exists.'" (quoting Ky. Rev. Stat. Ann. § 501.020(3) (West 1974))).[5] In accord with the above-cited authority, the Court finds that "wanton" is more than recklessness—it is a conscious or intentional disregard for the rights or safety of others; it is recklessness-plus, so to speak.

### B.  Begay *May not Apply*

Even assuming that the *Begay* test continues to apply to previous convictions "akin to strict liability, negligence, and recklessness crimes," as the Court has resolved to do, it is far from clear that *Begay* would apply to wanton endangerment with a firearm. If the *Sykes* majority is understood to have limited *Begay* to recklessness crimes at the most, then it would seem that wanton endangerment is outside the scope of the unusual circumstances to which *Begay* applies. Since the Supreme Court stated that "[i]n general, levels of risk divide crimes that qualify [as crimes of violence under the residual clause] from those that do not," and decided the case at hand in *Sykes* without reference to the *Begay* test, a similar, more general analysis may be in order for this case as well. Assuming this approach is appropriate, the Court has no trouble concluding that wanton endangerment with a firearm (using an inherently dangerous and oftentimes violent device in intentional or conscious disregard for safety) is commensurate in degree of risk to the crimes

---

[5]  In contrast, Kentucky defines acting "recklessly" as "fail[ing] to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists." Ky. Rev. Stat. Ann. § 501.020(4) (West 1974) (definitions of mental states as used in penal code).

enumerated in the career offender guideline and the relevant commentary, particularly "crimes involving explosives."

### C. Even if Begay *Applies,* United States v. Peterson *Controls*

In the alternative, if *Begay* does apply to the West Virginia wanton endangerment statute, the Fourth Circuit's decision in United *States v. Peterson*, 629 F.3d 432 (4th Cir. 2011), controls.

#### 1. Background

In *Peterson*, the defendant was convicted of several drug trafficking crimes and given the career offender enhancement based on two prior convictions, one of which was involuntary manslaughter under North Carolina law. That conviction arose from an incident where the defendant and a friend were playing with what they (mistakenly) believed to be an unloaded gun, and the defendant accidentally shot and killed the friend. On appeal, the defendant contended that his involuntary manslaughter conviction was not a "crime of violence" under the career offender guideline. The government argued that it is a crime of violence, relying on two possible lines of analysis: (1) involuntary manslaughter qualifies as "manslaughter," which is included in the extended definition of "crime of violence" found in the commentary to U.S.S.G. §4B1.2; and (2) involuntary manslaughter falls into the residual clause of U.S.S.G. §4B1.2(a)(2), which the *Begay* Court limited to "purposeful, violent, and aggressive" predicate crimes.

#### 2. Holding

On the first issue, the Fourth Circuit stated that the six additional "crimes of violence" added by the commentary to §4B1.2 are legally binding, since they are not inconsistent with any federal law or the constitution. 629 F.3d at 435. In other words, the court held that "murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, [and] robbery" are per se "crimes of violence."

The Fourth Circuit then went on to say that the guidelines intend only the generic versions or common definitions of those crimes qualify as "crimes of violence"—so, for example, kidnapping as defined by West Virginia law is not necessarily a crime of violence, but kidnapping as it is generically defined or commonly understood is a crime of violence. With that in mind and pointing to the Model Penal Code ("MPC"), the court stated that "manslaughter" as it is commonly understood means a "homicide that 'is committed recklessly,' or that would be murder except for [emotional disturbance]." *Id.* at 436. It continued: "[the MPC] defines recklessness to mean a 'conscious[ ] disregard [ ] of a substantial and unjustifiable risk that the material element will result from [the] conduct.'" *Id.* The court contrasted that definition with North Carolina's definition of involuntary manslaughter, which "includes conduct amounting to both negligent homicide and homicide resulting from 'a thoughtless disregard of consequences or a heedless indifference to safety and rights of others,' which North Carolina defines as 'reckless.'" *Id.* at 437. The Fourth Circuit saw a distinction in the mental state required for manslaughter under the MPC (a conscious disregard) and the mental state required for involuntary manslaughter under North Carolina law (a thoughtless disregard). It ultimately found that the generic, MPC definition of manslaughter requires a higher mental state than does North Carolina state law, and the involuntary manslaughter conviction was therefore not a per se "crime of violence."

On the second issue, the Fourth Circuit began with the *Begay* case, which stated that, in order to be a crime of violence under the residual clause of the ACCA, the crime being considered must exhibit those three qualities (purposeful, violent, and aggressive) because all of the example crimes in the ACCA feature those attributes. The Fourth Circuit then stated that it had "little difficulty" in concluding the same for the career offender enhancement, based on not only the four examples in

13

U.S.S.G. §4B1.2(a)(2) but also the six additional crimes in the commentary to the guideline. In a roundabout way, then, the Fourth Circuit held that manslaughter (as generically defined) and the other crimes in comment one to §4B1.2 satisfy the *Begay* Court's standard that crimes of violence be purposeful, violent, and aggressive. From that holding, it follows that the MPC manslaughter mental state ("recklessness" or "a conscious disregard of risk") suffices as "purposeful" under the *Begay* analysis. As the Fourth Circuit itself said:

> The particular requirement of a mens rea . . . is clearly present in the additional six example crimes [contained in the commentary]. Considering the Model Penal Code's definition of the additional examples readily demonstrates this. Murder is committed purposefully, knowingly, or *recklessly* . . . kidnapping must be committed purposefully . . . aggravated assault is committed purposefully, knowingly, or *recklessly* . . . forcible sex offenses are generally committed purposefully or knowingly . . . and robbery is committed purposefully or *recklessly*. Because recklessness under the Model Penal Code is at least a conscious disregard of risk, we conclude that a predicate offense under U.S.S.G. section 4B1.2(a)(2) must similarly have a mens rea.

*Peterson*, 629 F.3d at 439 (emphasis added). Thus, under binding precedent in this circuit, recklessness under the MPC ("conscious disregard of risk") is a mens rea sufficient to qualify as "purposeful" conduct and may therefore constitute a "crime of violence," at least in the context of the career offender enhancement. Applying its holding to the facts of the case, the Fourth Circuit stated that involuntary manslaughter under North Carolina law was not a crime of violence because it "can be committed though negligent conduct, which does not have a mens rea." *Id.*

### 3. Application

The Fourth Circuit essentially took the reasoning from *Begay* and applied it to a larger swath of example crimes, since the commentary features six additional crimes that qualify as "crimes of violence" under the career offender enhancement. The *Peterson* court accepted (from *Begay*) that the example crimes limit the scope of the residual clause, and found that recklessness, at least as the

14

MPC defines it, is sufficient to amount to a crime of violence. This holding was based on the express inclusion in the commentary to §4B1.2 of at least three crimes that are generically defined as requiring only a recklessness mens rea to obtain a conviction. As stated above, the wanton endangerment with a firearm statute requires a conscious or intentional disregard for the rights or safety of others. That mental state satisfies the definition of "recklessness" under the MPC ("conscious disregard" rather than "thoughtless disregard"), and it surely exceeds the "negligent conduct" mental state the *Peterson* court found insufficient. As such, wanton endangerment with a firearm is a "crime of violence" under binding Fourth Circuit precedent, and the persuasive precedent cited by Defendant in support of his objection must therefore be summarily rejected.

## IV. CONCLUSION

Defendant's two convictions for wanton endangerment with a firearm in violation of W. Va. Code § 61-7-12 are qualifying crimes of violence under the career offender enhancement, as interpreted by the Fourth Circuit. The objection is **OVERRULED**, and the §4B1.1 enhancement will be applied at sentencing.[6]

---

[6] Defendant also objected to the probation officer's failure to recommend a minor role reduction pursuant to U.S.S.G. §3B1.2(b). The objection is **OVERRULED**. Every circuit to have considered the issue has determined that "career offenders" cannot receive a minor role reduction to the extent that such an adjustment would result in an offense level that falls below the career-offender minimum established by U.S.S.G. §4B1.1(b). *See United States v. Jeppeson*, 333 F.3d 1180, 1182–84 (10th Cir.2003); *United States v. Jeter*, 329 F.3d 1229, 1230 (11th Cir.2003) (per curiam); *United States v. Perez*, 328 F.3d 96, 97–98 & n.2 (2d Cir.2003) (per curiam); *United States v. Johnson*, 155 F.3d 682, 683-84 (3d Cir.1998); *United States v. Beltran*, 122 F.3d 1156, 1160 (8th Cir.1997); *United States v. Griffin*, 109 F.3d 706, 708 (11th Cir.1997) (per curiam); *United States v. McCoy*, 23 F.3d 216, 217 (9th Cir.1994) (per curiam); *United States v. Morales-Diaz*, 925 F.2d 535, 540 (1st Cir.1991).

In this case, Defendant's base offense level is derived from the table in U.S.S.G. §4B1.1(b), and no adjustment may reduce his offense level below that prescribed by §4B1.1(b) save acceptance of responsibility, U.S.S.G. §3E1.1, which is specifically allowed for in the career offender guideline.
(continued...)

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: June 20, 2011

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

---

[6](...continued)
*See* U.S.S.G. § 4B1.1(b) ("If an adjustment from §3E1.1 (Acceptance of Responsibility) applies, decrease the offense level by the number of levels corresponding to that adjustment.").